UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND INDIANA

-FILED-

NOV 17 2016

At _____M
ROBERT N. TRGOVICH, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | Case No. 2 - 16 CR 160 |
| v. | ) | |
| | ) | 18 U.S.C. § 666(a)(1)(B) |
| JOHN CORTINA | ) | 18 U.S.C. § 666(a)(2) |
| JAMES E. SNYDER | ) | 26 U.S.C. § 7212(a) |

**INDICTMENT**

**THE GRAND JURY CHARGES:**

**COUNT 1**

**(Federal Program Bribery – Bribe Recipient)**

From in or about January 2016, to October of 2016, in the Northern District of Indiana, the defendant,

**JAMES E. SNYDER,**

the Mayor and agent of the City of Portage, Indiana, did knowingly and corruptly solicit, demand, accept, and agree to accept two bank checks in the amounts of $10,000 and $2,000 from John Cortina and Individual A, intending to be influenced and rewarded in connection with a transaction and series of transactions of the City of Portage, Indiana, involving $5,000 or more, that is: a towing contract between John Cortina and Individual A's towing company, and the City of Portage. During the one-year period ending

1

October 2016, the City of Portage, Indiana, received benefits in excess of $10,000 under a Federal Program involving a grant, contract, subsidy, loan, or other form of Federal assistance.

All in violation of Title 18 United States Code, Section 666(a)(1)(B).

THE GRAND JURY FURTHER CHARGES:

## COUNT 2

**(Federal Program Bribery –Bribe Payer)**

From in or about January 2016, to October of 2016, in the Northern District of Indiana, the defendant,

## JOHN CORTINA

did knowingly and corruptly give, offer, and agree to give two bank checks in the amounts of $10,000 and $2,000 to James Snyder, intending to influence and reward James Snyder, Mayor and agent of the City of Portage, Indiana, in connection with a transaction and series of transactions of the City of Portage, Indiana, involving $5,000 or more, that is: a towing contract between John Cortina and Individual A's towing company, and the City of Portage. During the one-year period ending October 2016, the City of Portage, Indiana, received benefits in excess of $10,000 under a Federal Program involving a grant, contract, subsidy, loan, or other form of Federal assistance.

All in violation of Title 18 United States Code, Section 666(a)(2).

**THE GRAND FURTHER JURY CHARGES:**

## COUNT 3

**(Corrupt Solicitation of a Thing of Value)**

From in or about January 1, 2012 and on or about January 10, 2014, in the Northern District of Indiana, the defendant,

**JAMES E. SNYDER**

Mayor and agent of the City of Portage, Indiana, did corruptly solicit, demand, accept, and agree to accept a bank check in the amount of $13,000, intending to be influenced and rewarded in connection with a transaction and series of transactions of the City of Portage, Indiana, involving $5,000 or more, that is: contracts approved by the Portage Board of Works totaling over $1.125M; a construction project undertaken by the Portage Redevelopment Commission at an approximate cost of $13,000; and other consideration. During the one-year period ending January 10, 2014, the City of Portage, Indiana, received benefits in excess of $10,000 under a Federal Program involving a grant, contract, subsidy, loan, or other form of Federal assistance.

All in violation of Title 18 United States Code, Section 666(a)(1)(B).

**THE GRAND JURY FURTHER CHARGES:**

## COUNT 4

### (Corrupt Interference with the Administration of the Internal Revenue Laws)

### Introduction

At times material to this Indictment:

1. Defendant acted as General Manager of First Financial Trust Mortgage LLC, a mortgage loan origination business located at 5955 Central Avenue in Portage, Indiana. As FFTM's General Manager, Defendant exercised control over its business affairs, including approving payments and controlling FFTM's bank accounts.

2. Throughout 2007, 2008 and 2009, FFTM withheld taxes from its employees' paychecks, including federal income taxes, Medicare, and social security taxes (often referred to as Federal Insurance Contribution Act or "FICA" taxes). These taxes are referred to collectively in this Indictment as payroll taxes.

3. FFTM was required to pay payroll taxes to the Internal Revenue Service on a periodic basis. FFTM was also required to file with the IRS, following the end of each calendar quarter, a Form 941 ("Employer's Quarterly Federal Income Tax Return") setting forth: the total amount of

wages and other compensation subject to withholding; the total amount of income tax withheld; the total amount of social security and Medicare taxes due; and the total tax deposits made, if any.

  4. As General Manager of FFTM, Defendant was responsible for the payment of payroll taxes and the timely submission of Form 941s to the IRS.

FFTM's Payroll Tax Debt

  5. Despite withholding payroll taxes from FFTM's employees' paychecks, Defendant failed to pay, and caused FFTM to fail to pay, tens of thousands of dollars in payroll taxes for tax years 2007, 2008 and 2009.

  6. Defendant also failed to timely file, and caused FFTM to fail to timely file, FFTM's Form 941s with the IRS; although each form was due at the end of the month following its corresponding calendar quarter, they were not submitted to the IRS until: October 14, 2008 (Second Quarter 2008); April 19, 2009 (Fourth Quarter 2008), August 24, 2009 (Second Quarter 2009) and February 1, 2011 (First, Third and Fourth Quarters 2009).

  7. Defendant also failed to timely file, and caused FFTM to fail to timely file, FFTM's Form 1120S ("U.S. Income Tax Return for an S Corporation") for tax years 2010 and 2011; although each form was due on March 15th following its corresponding tax year, neither was filed with the IRS until the fourth quarter of 2012.

8. On or about July 13, 2009, the IRS sent FFTM and Defendant a Notice CP504 ("Notice of Intent to Levy") stating that to prevent collection actions including the levying of assets and filing of federal tax liens, the amount due must be paid immediately.

9. On or about July 24, 2009, an agent of FFTM acting on Defendant's behalf obtained FFTM's account transcripts from the IRS which showed that, as of that date, FFTM owed approximately $83,000 to the IRS.

10. On or about November 30, 2009, FFTM's agent obtained updated transcripts showing that FFTM's IRS tax debt had grown to approximately $97,000.

11. Despite FFTM owing tens of thousands of dollars to the IRS in unpaid payroll taxes, Defendant caused FFTM to transfer a total of over $111,000 to his personal bank account in 2009.

12. On or about January 27, 2010, Defendant signed an employment agreement with a mortgage company referred to herein as MC. The agreement identified Defendant as Principal Manager of a retail office of MC located at 5955 Central Avenue in Portage, Indiana (the address of FFTM). Under the arrangement made between FFTM and MC, FFTM would continue to operate as a mortgage broker, and the loans made as a result of that activity would be made by MC. In addition to hiring Defendant as a W-2 wage-earning employee, MC hired and paid the salaries of other FFTM

7

employees. However, MC was not made aware of, nor did it agree to become responsible for, FFTM's previously unpaid payroll tax liabilities.

13. From on or about January 27, 2010 through the remainder of the year, Defendant and his former FFTM employees continued doing business under FFTM's name despite being employed and paid by MC. This remained true even after FFTM was administratively dissolved by the Indiana Secretary of State on June 14, 2010.

14. The costs incurred by the operation of FFTM were accounted for by Defendant and regularly billed to MC. At Defendant's request, MC reimbursed those costs by sending payment to a company Defendant created called SRC Properties LLC.

15. Defendant registered SRC, a single member company he wholly owned, with the Indiana Secretary of State on September 14, 2009. He later updated SRC's registration to show it was also doing business as SRC Marketing LLC. The place of business of SRC and SRC Marketing was 5955 Central Avenue in Portage, Indiana (the same address as FFTM and the MC branch office). Defendant established a bank account in the name of SRC on February 5, 2010. Beginning soon after that date, MC began remitting to SRC and SRC Marketing its reimbursements for FFTM's costs of doing business. Defendant's arrangement with MC, and specifically his directing

MC to reimburse FFTM's operating expenses by sending payment to SRC, constituted an effort to obstruct and impede the IRS, as described below.

16. On or about March 21, 2010, facing collection efforts by the IRS on FFTM's tax debt, Defendant signed and caused to be submitted to the IRS a Form 656 ("Offer in Compromise" or "OIC"), asking the IRS to accept $5,000 (5.15% of the amount FFTM owed) in exchange for forgiving FFTM's over $97,000 in payroll tax debt. The reason provided to the IRS in support of the OIC was "doubt as to collectability" – that is, a claim that FFTM had "insufficient assets and income to pay the full amount." Defendant signed the OIC under penalty of perjury, declaring that he "examined [the] offer, including accompanying schedules and statements, and to the best of [his] knowledge and belief, it [was] true, correct and complete." The IRS rejected FFTM's OIC.

17. In 2010, 2011 and 2012, a total of over $400,000 was transferred to SRC from MC during a time when the IRS was attempting to collect FFTM's payroll tax debt.

18. On or about August 15, 2011, the IRS sent FFTM and Defendant a Form CP504B ("Notice of Intent to Levy") which again warned of the IRS's intent to seize property or rights to property including, among other things, "[p]ersonal assets (including your car and home)".

19. On or about August 22, 2011, an agent of FFTM acting on Defendant's behalf obtained FFTM's account transcripts from the IRS which showed that, as of that date, FFTM owed approximately $151,000 to the IRS.

20. On September 19, 2013, the IRS informed Defendant that the trust fund penalty portion of FFTM's unpaid payroll taxes, which it conservatively calculated to be over $39,000, was being assessed against Defendant personally.

Defendant's Personal Tax Debt

21. In 2009, following an IRS audit of Defendant's personal tax filings for 2005, 2006, and 2007, Defendant was informed that he owed approximately $29,000 in additional income taxes. On March 24, 2009, Defendant signed a Form 870 ("Waiver of Restriction on Assessment and Collection of Deficiency in Tax"), agreeing not to contest the IRS's determination that, with penalties and interest, he owed the IRS nearly $40,000.

22. On or about March 21, 2010, facing collection efforts by the IRS on his personal tax debt, Defendant signed under penalty of perjury and submitted an OIC asking the IRS to accept $1,000 (2.5% of the amount he owed) in exchange for forgiving his nearly $40,000 in personal tax debt. The reason provided to the IRS in support of the OIC was again "doubt as to collectability" – that is, a claim that Defendant had "insufficient assets and

income to pay the full amount." Defendant asserted on the form that "the prospects do not appear great for the future payment of the balance due."

23. When an OIC is made on the basis of doubt as to collectability, the IRS requires individual taxpayers to complete a Form 433-A ("Collection Information Statement for Wage Earners and Self-Employed Individuals"), disclosing all of their income, assets, expenses, and debt for the prior three-month period. On or about March 21, 2010, Defendant signed under penalty of perjury and caused to be submitted to the IRS a Form 433-A which contained false information and omitted information in an effort to obstruct and impede the IRS, as discussed in more detail below.

24. In 2011, after Defendant's Offer in Compromise was rejected and the IRS sent additional notices of intent to levy Defendant's bank accounts and file tax liens on his property, Defendant sought an installment agreement with the IRS. If granted and timely paid, an installment agreement ceases IRS collection actions against a debtor. When a taxpayer is seeking to establish or maintain an installment agreement with the IRS, they are required to periodically fill out and submit Form 433-As, disclosing all income, assets, expenses, and debts during the prior three-month period.

25. On or about January 20, 2011, in support of his request for an installment agreement with the IRS, Defendant signed under penalty of perjury and caused to be submitted to the IRS a second Form 433-A which

11

contained false information and omitted information in an effort to obstruct and impede the IRS, as discussed in more detail below. Based on the false and incomplete information Defendant provided, the IRS granted his request to pay $112 per month toward his personal tax debt.

26. Defendant failed to timely file his 2010 and 2011 Form 1040s ("U.S. Individual Income Tax Return"); those forms were not filed with the IRS until the fourth quarter of 2012.

27. In or about October 2012, in preparation for the untimely filing of Defendant's 2010 and 2011 Form 1040s and FFTM's 2010 and 2011 Form 1120Ss, Defendant hired a friend and former business associate to review and categorize the income and expenses of Defendant, SRC, and FFTM. In the process, Defendant's friend and former business associate endeavored to "bury" income and "fabricate" details on Defendant's behalf and for his financial benefit.

28. Defendant attempted to conceal from the IRS the existence of his sole proprietorship SRC until December 2012, by which time SRC had received deposits totaling over $640,000 in 2010, 2011 and 2012. While the existence of SRC and its bank account remained hidden from the IRS, Defendant was able to loan over $73,000 from SRC to his own mayoral election campaign to help facilitate his election to public office.

29.   On or about April 2, 2013, in response to an IRS request for updated financial information in order to keep Defendant's installment agreement intact, Defendant signed under penalty of perjury and caused to be submitted to the IRS a third Form 433-A which contained false information and omitted information in an effort to obstruct and impede the IRS, as discussed in more detail below.

### *Defendant's Scheme to Impede and Obstruct the Administration of the Internal Revenue Laws*

30.   From in or about January 2010 and continuing thereafter up to and including April 2, 2013, in the Northern District of Indiana and elsewhere,

**JAMES E. SNYDER,**

Defendant herein, did corruptly endeavor to obstruct and impede the due administration of the internal revenue laws, Title 26 of the United States Code, through the design and execution of a scheme to obstruct and impede the IRS's collection of unpaid taxes, by doing the following: (1) During a time when the IRS was attempting to collect FFTM's tax debt, defendant diverted the repayment of FFTM's operating expenses to SRC; and (2) During a time when the IRS was attempting to collect Defendant's unpaid personal tax debt, defendant attempted to negotiate a settlement and negotiated an installment agreement with the IRS as to his personal tax debt by submitting

under penalties of perjury a series of Form 433-As which failed to disclose sources of income and the existence of assets.

31. Specifically, in furtherance of his scheme to obstruct and impede the IRS, Defendant engaged in and caused to be engaged in, the following acts:

   a. From in or about January 2010 to in or about 2013, Defendant caused MC to disburse to SRC payments for FFTM's operating expenses;

   b. On or about March 21, 2010, Defendant signed under penalty of perjury and caused to be submitted to the IRS a Form 433-A which:

      1) concealed his employment with MC;

      2) concealed the existence of his sole proprietorship SRC;

      3) concealed the over $17,000 in gross wages Defendant had earned from MC during the reporting period;

      4) concealed the existence of SRC's bank account; and

      5) concealed the over $54,000 deposited into SRC's bank account during the reporting period.

   c. On or about January 20, 2011, in support of his request for an installment agreement with the IRS, Defendant signed under

14

penalty of perjury and caused to be submitted to the IRS a second Form 433-A which:

    1) concealed the existence of SRC;

    2) concealed the existence of SRC's bank account; and

    3) concealed the over $35,000 deposited into SRC's bank account during the reporting period.

d. On or about April 2, 2013, in response to an IRS request for updated financial information in order to keep Defendant's installment agreement intact, Defendant signed under penalty of perjury and caused to be submitted to the IRS a third Form 433-A which:

    1) concealed Defendant's continued employment with MC;

    2) concealed the over $20,000 Defendant had received in wage income from MC during the reporting period;

    3) concealed the existence of SRC's bank account; and

    4) concealed the nearly $25,000 deposited into SRC's bank account during the reporting period.

All in violation of 26 U.S.C. § 7212(a).

# FORFIETURE ALLEGATION

1.     The allegations contained in Counts 1 and 3 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and 28 U.S.C. § 2461.

2.     Upon conviction of an offense in violation of Title 18, United States Code, Section 666, set forth in Counts 1 and 3 of this Indictment, Defendant James Snyder shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and 28 U.S.C. § 2461, any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense(s).

3.     If any of the property described above, as a result of any act or omission of the defendant:

    a.     cannot be located upon the exercise of due diligence;

    b.     has been transferred or sold to, or deposited with, a third party;

    c.     has been placed beyond the jurisdiction of the court;

    d.     has been substantially diminished in value; or

    e.     has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

*/s/ FOREPERSON*
FOREPERSON


DAVID CAPP
UNITED STATES ATTORNEY


By: */s/ Philip C. Benson*
Philip C. Benson
Assistant United States Attorney


By: */s/ Jill R. Koster*
Jill R. Koster
Assistant United States Attorney