UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CAUSE No.: 2:16-CR-160-2-TLS-JEM |
| JAMES E. SNYDER | |

**OPINION AND ORDER**

This matter is before the Court on Defendant James E. Snyder's Motion to Dismiss Count 2 on Double Jeopardy Grounds [ECF No. 363]. For the reasons set forth below, the Defendant's Motion is DENIED.

**FACTUAL AND PROCEDURAL HISTORY**

Although the factual and procedural background of this case has been discussed by the Court at length in earlier orders, a brief recount of the relevant facts and procedural history is necessary.

The Defendant was previously the mayor of Portage, Indiana ("City"). Nov. 27, 2019 Order 3, ECF No. 322. As mayor, the Defendant directed the City to buy automated garbage trucks. *Id.* The City ultimately purchased four garbage trucks from Great Lakes Peterbilt, a truck dealership owned by Robert and Steve Buha. *Id.* After the City purchased the trucks from Great Lakes Peterbilt, the Buha brothers wrote the Defendant a check for $13,000. *Id.* at 4. The Defendant claims that the check was payment for consulting services he provided Great Lakes Peterbilt. *Id.* at 5.

After years of investigations, charges were brought against the Defendant. On November 17, 2016, an Indictment [ECF No. 1] was filed, charging the Defendant with two counts of accepting a bribe in violation of 18 U.S.C. § 666(a)(1)(B) (Counts 1 and 2) and one count of

1

interfering with the administration of the Internal Revenue Code in violation of 26 U.S.C. § 7212(a) (Count 3).[1] Count 2 concerns the above described payment the Defendant received from the Buha brothers.

From January 14, 2019, to February 14, 2019, this case proceeded to a 19-day jury trial. *See* ECF Nos. 218–20, 222–27, 229, 234, 236, 238, 241, 243, 249–52. During trial, the Buha brothers did not testify, as they invoked their Fifth Amendment privilege against self-incrimination. Nov. 27, 2019 Order 9.[2] On February 14, 2019, the Jury returned a verdict of not guilty on Count 1 and verdicts of guilty on Counts 2 and 3. Jury Verdict, ECF No. 256.

On February 8, 2019, prior to the conclusion of the trial, the Defendant filed a Motion for Judgment of Acquittal [ECF No. 245]. After the trial concluded, on February 28, 2019, the Defendant filed a Supplement to his Motion for Judgment of Acquittal [ECF No. 262] and a Rule 33 Motion for a New Trial [ECF No. 263]. The Court, in its November 27, 2019 Order [ECF No. 322], denied the Defendant's Motion for Judgment of Acquittal [ECF No. 245] and granted in part and denied in part the Defendant's Rule 33 Motion for a New Trial [ECF No. 263] by granting the Defendant's request for a new trial as to Count 2 but denying his request for a new trial as to Count 3. The Court cited "the cumulative effect of several irregularities on behalf of the government" as its justification for ordering a new trial. Nov. 27, 2019 Order 7.

On December 11, 2019, this case was reassigned from Judge Van Bokkelen to the undersigned. *See* ECF No. 327. Shortly thereafter, the Defendant filed a Motion to Dismiss Count 2 [ECF No. 329] and Motion to Dismiss Count 3 [ECF No. 331]. The Court, in its January

---

[1] Although these Counts are identified in the Indictment as Counts 1, 3, and 4, at trial the Counts were presented to the Jury as Counts 1, 2, and 3.
[2] The Court refers to both Buha brothers throughout its Opinions and Orders because the parties refer to both brothers throughout their briefs. However, it should be clarified that only Robert Buha took the witness stand and invoked his Fifth Amendment privilege. See Trial Tr. vol. 16, 180–89, ECF No. 337; Trial Tr. vol 17, 16, ECF No. 361.

2

21, 2020 Order [ECF No. 345], denied both motions. The Defendant, on March 5, 2020, then filed the instant Motion to Dismiss Count 2 on Double Jeopardy Grounds [ECF No. 363] as well as a Motion to Dismiss Count 2 Based on the Supervisory Power of the Court [ECF No. 365]. At this time both Motions are fully briefed and on August 24, 2020, the Court held an Oral Argument Hearing [ECF No. 402] to allow the parties to present additional arguments.

The Court, in this Opinion and Order, denies the Defendant's Motion to Dismiss Count 2 on Double Jeopardy Grounds [ECF No. 363]. The Court is simultaneously issuing a separate order which addresses the Defendant's Motion to Dismiss Count 2 Based on the Supervisory Power of the Court [ECF No. 365].

## ANALYSIS

The Defendant's Motion to Dismiss Count 2 on Double Jeopardy Grounds [ECF No. 363] argues that the Defendant's retrial is barred by the Double Jeopardy Clause of the Fifth Amendment because the Government engaged in prosecutorial misconduct. The Defendant's argument relies upon both the well-established Fifth Amendment protections set forth by the Supreme Court in *Oregon v. Kennedy*, 456 U.S. 667 (1982), as well as the less acknowledged extension to *Kennedy* contemplated by the Second Circuit in *United States v. Wallach*, 979 F.2d 912 (2d Cir. 1992). The Seventh Circuit has not formally adopted the *Wallach* extension; however, regardless of whether *Wallach* applies, the Defendant's retrial is not barred.

Both *Kennedy* and *Wallach* present circumstances in which a defendant's retrial is barred; however, both require that the prosecutor engage in misconduct. *United States v. Oseni*, 996 F.2d 186, 188 (7th Cir. 1993); *Wallach*, 979 F.2d at 917. In this case, the Defendant argues that AUSA Koster engaged in misconduct, which he refers to as the "Buha Error," when she stated that the government did not believe that the Buha brothers were truthful when they testified

3

before the grand jury and when she revoked the immunity granted to the Buha brothers during the grand jury proceedings. However, the Court has previously held that neither amounts to prosecutorial misconduct. Furthermore, even if prosecutorial misconduct occurred, the Court would not grant the Defendant's Motion because he has failed to show that his retrial is barred under either *Kennedy* or *Wallach*.

**A.     The "Buha Error"**

During Attorney Cacioppo's cross-examination of Agent Eric Field, AUSA Koster made numerous hearsay objections as Attorney Cacioppo attempted to question the witness. Trial Tr. vol. 6, 185–87. The following exchange occurred:

> **Q**. At no point during your investigation was there ever any evidence that the $13,000 paid to James Snyder was ever intended to be a bribe, correct?
>
> **A**. No, that's not correct.
>
> **Q**. There's testimony from a witness—it can only be Steve Buha or Robert Buha—saying that they intended $13,000 to be a bribe?
>
> **Ms. Koster:** Objection, Your Honor, argumentative. Also hearsay.

*Id.* at 185–86. During the objection argument, the Court, at the request of AUSA Koster, held a sidebar ("Sidebar"). *Id.* at 187. During the Sidebar, the following exchange occurred:

> **Ms. Koster:** Judge, Robert and Steve Buha testified in the grand jury. They were granted immunity to do that. Okay. The government does not believe that they have been truthful. They—
>
> **Ms. Cacioppo:** (Indicating.)

**Ms. Koster:** I would like, please—allow me to finish, please. This is very important. This is the crux of the charge.

**The Court:** This question is not the crux of the change.

**Ms. Koster:** No, this question—

**Ms. Cacioppo:** Thank you, Judge.

**Ms. Koster:** Well, arguably, it is, Your Honor.

**The Court:** You think this question makes the whole thing? Once he testifies, we can all go home as to this count; is that what you're saying?

**Ms. Koster:** If you allow this—the testimony of the Buha brothers from the grand jury—

**The Court:** That's not what I said.

**Ms. Koster:** —in on cross-examination, then any testimony from any witness in the grand jury is admissible if this witness is familiar with it. Of course not.

**The Court:** The question—

**Ms. Koster:** I want to make this clear, Judge. Here's the thing, the Buha brothers had immunity to testify in the grand jury. They don't have immunity to testify at trial unless the government asks the Court to extend that, and we don't plan to do that.

**The Court:** I understand that.

**Ms. Koster:** They need to take the witness stand and testify under oath subject to cross-examination if what they believe is going to be admissible. Their out-of-court statements as to whether they intended this to be a bribe is what she is attempting to elicit here, and that testimony is hearsay.

5

(Counsel simultaneously speaking.)

**Ms. Cacioppo:** It was under oath.

**Ms. Koster:** That doesn't make it non-hearsay—

**Ms. Cacioppo:** I'm just saying—

**Ms. Koster:** —and you know that.

**Ms. Cacioppo:** You're saying it's fundamentally unbelievable because they had immunity. So you're saying they perjured themselves—

**Ms. Koster:** I'm saying—

**Ms. Cacioppo:** —because they had immunity

**Ms. Koster:** I'm saying—

**The Court:** What was your question again?

**Ms. Cacioppo:** My question is, is there any evidence in the case that the Buhas ever intended to make that $13,000 payment a bribe.

**The Court:** I'm not going to let that question be asked that way.

**Ms. Cacioppo:** How would you let it be asked?

**The Cour**t: Well, the thing is that I know where you're going with it.

**Ms. Cacioppo:** Yeah, but there's no evidence, Judge.

**The Court:** It just seems like we daze around a little bit.

**Ms. Cacioppo:** But there is no evidence in the case that Buhas or anybody associated with them ever said it was a bribe.

**The Court:** Somebody's going to call them. I assume.

**Ms. Cacioppo:** Well, she's going to revoke their immunity so that they can't testify—

6

**Ms. Koster:** No, that's—

**Ms. Cacioppo:** —so my hands are going to be tied.

**Ms. Koster:** —not true. I never said that. I said I'm not going to give them immunity. They never had immunity to testify at trial. They had immunity—

**Ms. Cacioppo:** I understand that, but you're—

**Ms. Koster:** —to testify in front of the grand jury.

**Ms. Cacioppo:** —going to revoke it from the grand jury.

**Ms. Koster:** No.

**The Court:** Wait a minute. Stop. I'm going to sustain the objection as to the question as you've phrased it.

**Ms. Cacioppo:** That I just phrased?

**The Court:** That you just phrase.

**Ms. Cacioppo:** Okay.

**The Court:** If not, I—

**Ms. Koster:** I understand.

**The Court:** I can't do any more than I did.

**Ms. Koster:** I understand. I want Your Honor—she's just going to rephrase it, and she's going to ask the same thing a different way, and we're going to be right back here. And I don't want to upset you further, so I—

**The Court:** I'm not upset. I'm very content right now. But I'm saying I'm not going to sanitize this case the way the government wants to sanitize the case. There's two sides to it.

> **Ms. Koster:** We just want the rules of evidence to be followed, Judge. We are not asking for anything extraordinary—
>
> **The Court:** And I'm trying to do that. I could go to the residual exception. I could go to an exception to let it in.
>
> **Ms. Koster:** You think the residual exception applies?
>
> **The Court:** They were under oath.
>
> **Ms. Koster:** That doesn't make it—that does not make it admissible.
>
> **The Court:** I'm not going to let it in then. I sustained the objection. I can't do any more than that.
>
> **Ms. Koster:** All right. Just know that if she goes and asks it a different way, I'm going to ask—
>
> **The Court:** You can object.
>
> **Ms. Koster:** —to be heard—
>
> **The Court:** You can object.
>
> **Ms. Koster:** Okay. I have no choice.
>
> (End of bench conference.)

*Id.* at 187–92. When Robert Buha was called to testify, he invoked his Fifth Amendment privilege against self-incrimination. Trial Tr. vol. 16, 180–89. The Defendant argues that during this Sidebar the Government accused the Buha brothers of committing perjury and revoked their previously awarded immunity to testify, which resulted in their testimony being blocked.

The Defendant, in response to the "Buha Error," filed a Motion for Judgment of Acquittal and Motion to Dismiss Count 2 for Prosecutorial Misconduct [ECF No. 262] arguing that the Government's conduct amounted to "prosecutorial misconduct and a violation of due process."

Suppl. to Mot for Judgment of Acquittal 1, ECF No. 262. The Court, based on the totality of the Government's conduct, determined that a new trial was necessary, but declined to enter a judgment of acquittal or dismiss Count 2 and "[did] not find[] prosecutorial misconduct." Nov. 27, 2019 Order 13.[3]

**B.  AUSA Koster Did Not Commit Prosecutorial Misconduct**

The Defendant argues that AUSA Koster's accusation of perjury and revocation of immunity are examples of prosecutorial misconduct because she acted to intimidate the Buha brothers to block them from testifying. However, AUSA Koster never threatened the witnesses with perjury charges and she could not revoke the Buha brothers' immunity because the immunity no longer afforded the Buha brothers any protection from prosecution.

Regarding perjury charges, although Attorney Cacioppo suggested that AUSA Koster was accusing the Buha brothers of committing perjury, AUSA Koster did not indicate that the Government intended to prosecute the Buha brothers for perjury. Trial Tr. vol. 6, 187–89. Further, while AUSA Koster said that "[t]he government does not believe that [the Buha brothers] have been truthful," it was Attorney Cacioppo and not AUSA Koster who first referenced perjury charges. *Id*. Finally, AUSA Koster's comment is not a threat, as it falls short of the obviously threatening conduct that other courts have deemed to be witness intimidation; *see Webb v. Texas*, 409 U.S. 95, 97 (1972) ("[T]he judge implied that he expected [the witness] to lie, and went on to assure him that if he lied, he would be prosecuted and probably convicted for perjury, that the sentence for that conviction would be added on to his present sentence, and that the result would be to impair his chances for parole."); *United States v. Smith*, 478 F.2d 976,

---

[3] The Defendant argues that the Court has already ruled that the Government committed an error regarding the Buha brothers. Although the Court observed "several irregularities on behalf of the [G]overnment," the Court did not find that AUSA Koster engaged in prosecutorial misconduct. *See* Nov. 27, 2019 Order.

9

977, 979 (D.C. Cir. 1973) (concluding that a prosecutor's in person statement to a witness representing that the witness, if he chose to testify, would be prosecuted for concealing a deadly weapon, obstruction of justice, and as a principal in a murder, resulted in depriving the defendant of the witness's testimony.), and was only made during a sidebar with Defendant's counsel and the Judge, *see United States v. Jackson*, 935 F.2d 832, 847 (7th Cir. 1991) ("The encounter took place in the presence of the district judge as well as all counsel, a setting which limited the potential for threats and overreaching intended to deter [the witness] from testifying.") As the statements cannot qualify as a threat to the witnesses, they are not prosecutorial misconduct.[4]

Regarding immunity revocation, on January 14, 2016, two Orders of Use Immunity Before the Grand Jury for both Stephen Buha and Robert Buha were issued. Jan. 14, 2016 Immunity Orders, 2:15-mc-79, ECF No. 34. The Orders required the Buha brothers "to testify and provide other information in regard to a matter to be presented to the November 2015 Regular Grand Jury, and to provide such information at any *other proceedings ancillary* to the above-styled matter." *Id.* at 2, 4 (emphasis added). The Defendant argues that the reference to "other proceedings ancillary" includes trial; however, the Government contends that the Buha brothers did not have immunity to testify at trial. The Court, in its November 27, 2019 Opinion and Order, declined to rule on the scope of the Immunity Order. Nov. 27, 2019 Op. & Order 13.

During the above described Sidebar, Attorney Cacioppo argued: "Well, [AUSA Koster]'s going to revoke their immunity so that [the Buha brothers] can't testify." Trial Tr. vol. 6, 190.[5] The instant Motions reiterate and build upon this claim made by Attorney Cacioppo. However,

---

[4] The separate Opinion and Order addressing the Defendant's Motion to Dismiss Count 2 Based on the Supervisory Power of the Court [ECF No. 365] contains a full comparison of the context of AUSA Koster's statements to caselaw surrounding witness intimidation.

[5] The Court notes that AUSA Koster did not affirmatively say that the Government was revoking the Buha brother's immunity, rather that they never had immunity to testify at trial and that she was opposed to granting them immunity.

10

the scope of the Immunity Orders is a red herring, because even under the Defendant's view, the Orders have no impact on the Buha brothers' potential testimony.

If the Buha brothers refused to testify after the "Buha Error" because they were concerned that they would be prosecuted for perjury, the Immunity Order is irrelevant to the resolution of the instant Motions. The Immunity Orders "granted immunity from the use against" Steven Buha and Robert Buha "in any criminal case of any testimony or other information compelled under such order, or any information directly or indirectly derived from such testimony or other information," except it did not immunize Steven Buha and Robert Buha "against charges of perjury, giving a false statement or otherwise failing to comply with the order of the Court." Jan. 14, 2016 Immunity Orders 2, 4; *see also* 18 U.S.C. § 6002. Thus, regardless of whether the Immunity Order was intended to grant the Buha brothers immunity to testify at trial or whether the Buha brothers' immunity was revoked by AUSA Koster, the Buha brothers would have still been subject to prosecution for perjury if they lied during trial.

Alternatively, if the Buha brothers refused to testify after the "Buha Error" because they were concerned that they would be prosecuted for bribery, the Immunity Order is equally irrelevant. If the Buha brothers were to be prosecuted for bribery, it would be pursuant to 18 U.S.C. § 666. The statute of limitations for such an offense is five years. 18 U.S.C. § 3282(a) ("Except as otherwise expressly provided by law, no person shall be prosecuted, tried or punished for any offense not capital, unless the indictment is found or the information is instituted within five years after such offense shall have been committed."). In the instant case, the Indictment provides that "[f]rom in or about January 1, 2012 and on or about January 10, 2014 . . . James E. Snyder . . . did corruptly solicit, demand, accept, and agree to accept a bank check in the amount of $13,000, intending to be influenced and rewarded in connection with a

11

transaction and series of transactions of the City of Portage, Indiana." Indictment 4, ECF No 1. The first day of trial in this case commenced on January 14, 2019, over five years after the alleged wrongdoing. As the Buha brothers were never indicted for bribery prior to January 10, 2019, the Buhas brothers, at the time of trial, were already immune from being prosecuted for bribing of the Defendant. *See United States v. Yashar*, 166 F.3d 873, 879–80 (7th Cir. 1999).[6]

At the time of trial, the Buha brothers' previously granted immunity was irrelevant to the proceedings. The immunity did not protect them from a perjury charge, they did not need protection from a bribery charge, and no other charge has been suggested. Based on the above analysis, the Court concludes that the scope of the Immunity Orders and whether the Buha brothers' immunity was revoked is equally irrelevant to the disposition of the instant Motions, because AUSA Koster could not have engaged in prosecutorial misconduct by revoking the grant of an irrelevant immunity.[7]

**C.     The Double Jeopardy Clause Does Not Warrant Dismissal of Count 2**

The Fifth Amendment of the United States Constitution provides that:

> No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself . . .

U.S. Const. amend. V. It is universally understood that the Double Jeopardy Clause of the Fifth Amendment "protects a defendant in a criminal proceeding against multiple punishments or repeated prosecutions for the same offense." *United States v. Dinitz*, 424 U.S. 600, 606 (1976)

---

[6] The Government has acknowledged that the statute of limitations has lapsed. Nov. 8, 2019 Oral Arg. Tr. 28, ECF No 378; Aug. 24, 2020 Oral Arg. Hr'g, Tr. 81, ECF No. 403

[7] The Defendant also argues that the "Buha Error" cannot be remedied because the Government has intimidated the Buha brothers, which will impact their future testimony. Mem. in Supp. of Mot. to Dismiss Count 2 on Double Jeopardy Grounds 21–23. This argument is duplicative of the arguments advanced in the Defendant's Motion to Dismiss Count 2 Based on the Supervisory Power of the Court [ECF No. 365]. The Court addresses this argument in full in the simultaneously issued Opinion and Order.

(citing *United States v. Wilson*, 420 U.S. 332, 343 (1975); *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)). Beyond this well-known protection, the Double Jeopardy Clause's protections can also be triggered when a trial is terminated over the objection of the defendant. *See Kennedy*, 456 U.S. at 672. Accordingly, prosecutors are generally prohibited, upon determination that a case is going poorly, from dismissing a case and subsequently reprosecuting the defendant. *Oseni*, 996 F.2d at 187–88.

1. ***The Supreme Court's Holding in* United States v. Kennedy *Does Not Bar the Defendant's Retrial*[8]**

In *Kennedy*, the Supreme Court addressed whether the Double Jeopardy Clause bars retrial of a defendant if the first trial ended in a mistrial due to prosecutorial misconduct. When considering this question, the Supreme Court held that only if "the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial . . . a defendant [may] raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion," thus establishing "a narrow exception to the rule that the Double Jeopardy Clause is no bar to retrial" when the defendant moves for a mistrial. *Kennedy*, 456 U.S. at 673, 76. The Supreme Court explained that the intent of the prosecutor is dispositive, as "[p]rosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, therefore, does not bar retrial absent *intent* on the part of the prosecutor to subvert protections afforded by the Double Jeopardy Clause." *Id.* at 675–76 (emphasis added).

In the instant case, *Kennedy* does not bar retrial of the Defendant. Foremost, there has been no prosecutorial misconduct. *See Oseni*, 996 F.2d at 188. Even if there were, the Defendant

---

[8] The Defendant does not explicitly argue that *Kennedy* bars the Defendant's retrial; however, *Kennedy*, not *Wallach*, is the law of the circuit.

13

did not move for mistrial, which the Seventh Circuit has indicated is a requirement for the invocation of *Kennedy*. *United States v. Doyle*, 121 F.3d 1078, 1086 (7th Cir. 1997) ("[A] defendant who did not move for a mistrial on the basis of intentional prosecutorial misconduct cannot invoke the double jeopardy clause to bar the state from retrying him after his conviction is reversed on that ground." (quoting *Beringer v. Sheahan*, 934 F.2d 110, 114 (7th Cir. 1991))).

      The Court acknowledges that a Rule 29 motion requesting a judgment of acquittal, a Rule 33 motion requesting a new trial,[9] and a motion for mistrial have similar consequences; however, only a motion for mistrial can be abused in the manner contemplated by the Supreme Court in *Kennedy*. In *Kennedy*, the Supreme Court was concerned that the prosecution could, upon realizing that a trial is going poorly, abort the trial by provoking the defendant into moving for a mistrial to obtain a second opportunity to prosecute the defendant. *Doyle*, 121 F.3d at 1085–86 (citing *Oseni*, 996 F.2d at 187–88). Neither Rule 29 nor Rule 33 motions create the same incentive. A successful Rule 29 motion bars retrial of a defendant, *Fong Foo v. United States*, 369 U.S. 141, 143 (1962); 2A Fed. Prac. & Proc. Crim. § 468 (4th ed.) ("A judgment of acquittal, whether resulting from a jury verdict or ordered by the court, terminates the prosecution, and . . . bars further proceedings against the defendant for the same offense, except to the extent that it may now be set aside on appeal by the government."), and a Rule 33 motion can only be made after a judgment has been entered against the defendant, *see* Fed. R. Crim. P. 33. As such, a prosecutor seeking a second opportunity to prosecute a defendant has no incentive to provoke Rule 29 or Rule 33 motions. Accordingly, neither motion triggers double jeopardy protections under *Kennedy*. *United States v. McAleer*, 138 F.3d 852, 856 (10th Cir. 1988)

---

[9] Because the Defendant argued his Rule 29 Motion should be sufficient, and also moved for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure, the Court has elected to consider whether either is sufficient to invoke the Double Jeopardy Clause as contemplated by the Supreme Court in *Kennedy*.

14

("Although Defendants attempt to characterize the district court's order setting aside the jury verdicts and granting a new trial as the functional equivalent of a mistrial, Defendants miss a crucial distinction.")

But even if there were prosecutorial misconduct, and even if either Motion were sufficient, *Kennedy* would still not bar the Defendant's retrial because he has failed to show that AUSA Koster had the requisite intent to warrant the invocation of the Double Jeopardy Clause. To bar retrial under *Kennedy*, the defendant must show that the prosecutor was "'trying to abort the trial' through his or her conduct." *United States v. Cornelius*, 623 F.3d 486, 497 (7th Cir. 2010) (quoting *Oseni*, 996 F.2d at 188). "The only relevant intent is intent to terminate the trial, not to prevail at this trial by impermissible means," thus "[i]t doesn't even matter that [the prosecutor] knows he is acting improperly, provided that his aim is to get a conviction." *Id.* (citing *Oseni*, 996 F.2d at 188).

The Defendant's motion argues that AUSA Koster committed the "Buha Error" to prevent the Buha brothers from being called as witnesses and testifying during trial because she knew that the Defendant would be acquitted if the Buha brothers were to testify. Even accepting this view, the prosecutor cannot have intended to *terminate* the trial by committing the "Buha Error;" rather, her intent was to *prevail* at trial, albeit by impermissible means. Simply terminating the trial would not serve the Government's needs in the Defendant's view; for example, if the testimony of the Buha brothers doomed the Government's case, it would make little sense to abort the trial knowing that the Buha brothers could still testify in the new trial.

For the reasons stated above, the Court concludes that the Defendant's retrial is not barred under *Kennedy*.

## 2.   *Even if it Applied, the Extension to Kennedy Contemplated by the Second Circuit in* United States v. Wallach *Does Not Bar the Defendant's Retrial*

The Defendant also argues *Wallach* should bar his retrial. In *Wallach*, the Second Circuit explored the need to extend the protections established by *Kennedy* and explained that:

> If any extension of *Kennedy* beyond the mistrial context is warranted, it would be a bar to retrial only where the misconduct of the prosecutor is undertaken, not simply to prevent an acquittal, but to prevent an acquittal that the prosecutor believed at the time was likely to occur in the absence of his misconduct. If jeopardy bars a retrial where a prosecutor commits an act of misconduct with the intention of provoking a mistrial motion by the defendant, there is a plausible argument that the same result should obtain where he does so with the intent to avoid an acquittal he then believes is likely. The prosecutor who acts with the intention of goading the defendant into making a mistrial motion presumably does so because he believes that completion of the trial will likely result in an acquittal. That aspect of the *Kennedy* rationale suggests precluding retrial where a prosecutor apprehends an acquittal and, instead of provoking a mistrial, avoids the acquittal by an act of deliberate misconduct. Indeed, if *Kennedy* is not extended to this limited degree, a prosecutor apprehending an acquittal encounters the jeopardy bar to retrial when he engages in misconduct of sufficient visibility to precipitate a mistrial motion, but not when he fends off the anticipated acquittal by misconduct of which the defendant is unaware until after the verdict. There is no justification for that distinction.

979 F.2d at 917. The Defendant argues that his retrial is barred based on this extension.

Most circuits, including the Seventh Circuit, have acknowledged the existence of the Second Circuit's proposed extension, but have refrained from formally subscribing to the extension of *Kennedy* set forth in *Wallach*. *See, e.g., United States v. Catton*, 130 F.3d 805, 808 (7th Cir. 1997) ("And so we have left open the question whether to adopt *Wallach's* dictum as the law of this circuit, *United States v. Doyle*, 121 F.3d 1078, 1085 (7th Cir. 1997), as has the Eighth Circuit. *Jacob v. Clarke*, 52 F.3d 178, 182 (8th Cir. 1995). We need not bite the bullet in this case either."). The Defendant represents that the Seventh Circuit has not rejected *Wallach* and that it has left "this area of law open for defendants to develop." Mem. in Supp. of Mot. to Dismiss Count 2 on Double Jeopardy Grounds 12, ECF No. 364. Even assuming that the Seventh

Circuit would adopt *Wallach*, it would not apply to the instant case because, as previously explained, there has been no finding of prosecutorial misconduct. Moreover, even if the Court did find that the conduct at issue constitutes prosecutorial misconduct, *Wallach* would still not apply because the Defendant was not "unaware" of the conduct, and the Defendant has failed to demonstrate that AUSA Koster had the required intent, or that the "Buha Error" was of sufficient severity to bar retrial under *Wallach*.

Foremost, even if the "Buha Error" represented prosecutorial misconduct, it is not the type of misconduct the Second Circuit sought to address in *Wallach*. The Second Circuit considered the need to narrowly expand *Kennedy* to afford protections to defendants who were unable to move for mistrial because they were unaware and unable to discover that prosecutorial misconduct had occurred until after their trial had concluded and judgment was entered. *Wallach*, 979 F.2d at 917. Similarly, the Seventh Circuit in *Catton* examined the difference between committing open and covert error and considered the argument that *Kennedy*, as it stands, encourages the commission of covert error by only punishing openly committed prosecutorial error. *Catton*, 130 F.3d at 807 ("*Kennedy* would leave a prosecutor with an unimpaired incentive to commit an error that would not be discovered until after the trial and hence could not provide the basis for a motion for a mistrial, yet would as effectively stave off an acquittal and thus preserve the possibility of a retrial."). The conduct at issue is incomparable to the conduct in either *Wallach* or *Catton*, as the Defendant was aware of the "Buha Error" during trial—as his attorney was present when it occurred and referenced it throughout the duration of the trial—and could have moved for a mistrial. The prosecutorial conduct in *Wallach* and *Catton* was, respectively, presenting false testimony and concealing exculpatory evidence, *see Wallach*,

979 F.2d at 913, *Catton*, 130 F.3d at 806, which, unlike statements made directly to defense counsel during a sidebar, cannot be easily discovered during the course of trial.[10]

Further, even if the "Buha Error" represented prosecutorial misconduct, it lacks the intent or severity necessary for the Defendant's retrial to be barred pursuant to *Wallach*. In *Wallach*, the Second Circuit explained that the factual predicate for extending *Kennedy* required "*deliberate* prosecutorial misconduct." *Wallach*, 979 F.2d at 917 (emphasis added). Further, the court, when analyzing the prosecutors' conduct and determining that the defendant's retrial was not barred, explained that the prosecutors did not act malevolently. *Id.* Other courts interpreting *Wallach* have also alluded that the error at issue must be severe to bar retrial. *United States v. Lewis*, 368 F.3d 1102, 1108 (9th Cir. 2004) ("Several subsequent cases have referenced the reasoning in *Wallach*. None, however, concluded that the relevant prosecutorial misconduct was sufficiently egregious to bar a retrial."); *United States v. Gary*, 74 F.3d 304, 315 (1st Cir. 1996) ("Indeed, courts have held that prosecutorial misconduct must rise to an egregious level for double jeopardy to bar a retrial."); *United States v. Pavloyianis*, 996 F.2d 1467, 1475 (2d Cir. 1993) ("[T]here is no indication he engaged in the type of conduct required to invoke the double jeopardy bar to retrial.").

The Defendant has failed to show that AUSA Koster had the requisite prosecutorial intent or to articulate why the "Buha Error" is sufficiently severe to satisfy the requirements of *Wallach*. Indeed, the Defendant has not identified what evidence in the record shows that the Government's intent was to avoid an acquittal which it reasonably believed at the time was likely

---

[10] The Defendant argues that the "Buha Error" was only discoverable after trial because "[i]t was only during the course of post-trial briefing that the prosecutor revealed she had no evidence to justify her accusation of perjury, and she admitted she could never prove it." Mem. in Supp. of Mot. to Dismiss Count 2 on Double Jeopardy Grounds 14. However, the Defendant's attorney argued during trial that the Buha brothers were not going to testify due to AUSA Koster's conduct, indicating that the Defendant was aware of the "Buha Error" and its effects before the conclusion of trial. Trial Tr. vol 16, 137–139, 181–89.

to occur absent the "Buha Error." *See Doyle*, 121 F.3d at 1087. The Defendant argues that "[b]ut for the Buha Error, there is a strong likelihood that [the Defendant] would have been acquitted," and that "[t]he timeline adds further weight to the Court's already-established finding that the government had no basis behind the Buha Error"; Mem. in Supp. of Mot. to Dismiss Count 2 on Double Jeopardy Grounds 14–18, however, both contentions are entirely speculative and neither directly satisfy the requirements of *Wallach*.

The Defendant also argues that "[t]he prosecutor's own statements show that she committed the Buha Error because she feared acquittal," because she "described her efforts at blocking the jury from hearing the Buha's testimony as 'the crux of the charge.'" *Id.* at 18–19, However, the context surrounding the "Buha Error" makes it clear that AUSA Koster was not attempting to block the Buhas brothers' testimony out of fear that the Defendant would be acquitted. Rather, it is apparent that AUSA Koster was attempting to prevent the Defendant from using Agent Field as a conduit for the Buha brothers' hearsay statements. Trial Tr. vol. 6, 187–92; *see also* Arg. Hr'g, Tr. 68–70. Such a conclusion is supported by the fact that the Court granted AUSA Koster's objection and withheld Agent Field's testimony. Accordingly, during the Sidebar, AUSA Koster certainly understood that her actions, if unsuccessful, would result in an increased likelihood that the Defendant would be acquitted. However, the Seventh Circuit in *Doyle* explained that "[p]rosecutors act at all times during trial with knowledge that if they do not perform in certain ways, acquittal may be a possibility." *See Doyle*, 121 F.3d at 1087. The Defendant has presented no evidence to suggest that AUSA Koster acted with more than "a general sort of fear of acquittal" which is insufficient to satisfy the requirements of *Wallach* and bar retrial. *See id.*

**D.     Additional Fifth Amendment Privilege**

The Defendant also argues his retrial should be barred because he "is not a wealthy man," and that he has "now lived under the continuing ordeal and accumulating expenses of federal prosecution for an additional four years"; therefore, the Double Jeopardy Clause should bar retrial "so that the [G]overnment cannot attempt to bankrupt [him]." Mem. in Supp. of Mot. to Dismiss Count 2 on Double Jeopardy Grounds 23–24. The Defendant thus seemingly requests the Court to recognize a Fifth Amendment privilege based on the retention of private counsel and the length of litigation. The Defendant provides no case law supporting such a privilege.[11] The Court holds the Defendant's retrial is not barred on this ground.

## CONCLUSION

For the reasons set forth above, the Court DENIES Defendant James E. Snyder's Motion to Dismiss Count 2 on Double Jeopardy Grounds [ECF No. 363].

SO ORDERED on October 22, 2020.

s/ Theresa L. Springmann  
JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT

---

[11] *United States v. Dinitz*, 424 U.S. 600 (1976), the only case cited in this portion of the Defendant's brief, does not articulate such a view of the Fifth Amendment.