UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CAUSE No.: 2:16-CR-160-2-TLS-JEM |
| JAMES E. SNYDER | |

## OPINION AND ORDER

This matter is before the Court on Defendant James E. Snyder's Motion to Dismiss Count 2 Based on the Supervisory Power of the Court [ECF No. 365]. For the reasons set forth below, the Defendant's Motion is DENIED.

## FACTUAL AND PROCEDURAL HISTORY

The factual and procedural background of this case has been discussed by the Court at length in earlier orders. The Court incorporates by reference its brief recount of relevant facts and procedural history as well as its description and analysis of the "Buha Error" and the Immunity Order contained within its Opinion and Order dismissing the Defendant's Motion to Dismiss Count 2 on Double Jeopardy Grounds [ECF No. 404], which is being issued simultaneously with the instant Opinion and Order.

## ANALYSIS

The Defendant, in his Motion to Dismiss Count 2 Based on the Supervisory Power of the Court [ECF No. 365], requests the court to invoke its supervisory power to dismiss Count 2 of the Indictment. By utilizing their supervisory powers, "federal courts may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress . . . to implement a remedy for violation of recognized rights; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury; and finally, as a

remedy designed to deter illegal conduct." *United States v. Hasting*, 461 U.S. 499, 505 (1983) (citations omitted). The Defendant argues that the Court should invoke its supervisory power and dismiss Count 2 of the Indictment because the Government violated the Defendant's due process rights when it deterred the Buha brothers from testifying by threatening them with perjury charges and/or by withdrawing their immunity to testify.

The Supreme Court has explained that the Defendant has the right to present a defense which "include[s], as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel." *Washington v. Texas*, 388 U.S. 14, 18 (1967) (quoting *In re Oliver*, 333 U.S. 257, 273 (1948)). Further,

> [t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Id.* Accordingly, "[i]t is well-settled that substantial government interference with a defense witness's free and unhampered choice to testify violates the defendant's due process rights." *Newell v. Hanks*, 283 F.3d 827, 837 (7th Cir. 2002) (citing *United States v. Vavages*, 151 F.3d 1185, 1191 (9th Cir. 1998); *Freeman v. Georgia*, 599 F.2d 65, 69 (5th Cir. 1979); *Lockett v. Blackburn*, 571 F.2d 309, 314 (5th Cir. 1978); *United States v. Morrison*, 535 F.2d 223, 225–28 (3d Cir. 1976)).

The Defendant compares his case to *Morrison*. In *Morrison*, the Third Circuit considered "whether [the] appellant was denied a fair trial in that he was deprived of his constitutional right to call witnesses in his defense by the actions of . . . the Assistant United States Attorney." *Morrison*, 535 F.2d at 224. In that case, the defendant's lawyer "planned his defense around the

testimony of [his girlfriend], who allegedly was prepared to swear it was she and not [the defendant] who had been involved in the conspiracy to sell hashish." *Id.* at 225. The AUSA

> [o]n at least three occasions . . . sent messages to [the witness] through counsel warning that she was liable to be prosecuted on drug charges; that if she testified, that testimony would be used as evidence against her and, further, that as she was now eighteen it would be possible to bring federal perjury charges against her.

*Id.* In addition to these communications, the AUSA also sent the witness a subpoena, which the Third Circuit concluded was used only to intimidate the witness because it was legally invalid. *Id.* at 225–26. Finally, the AUSA brought the witness to his office, where she was surrounded by law-enforcement officers involved in the case and was once again warned of the dangers of testifying. *Id.*

At trial, the witness refused to answer over thirty questions and the defendant was found guilty. *Id.* at 226. On appeal, the Third Circuit found that "[t]he actions of the prosecutor in his repeated warnings which culminated in a highly intimidating personal interview were completely unnecessary," *id.* at 227, and concluded that his conduct "was without doubt responsible for the course pursued by [the witness] in refusing to testify and to that extent deprived [the defendant] of due process of law under the Fourteenth Amendment," *id.* at 228.

Despite this comparison, *United States v. Johnson*, 437 F.3d 665 (7th Cir. 2006) is more applicable to the instant case. In *Johnson*, the defendant—like the Defendant in this case— argued that "the government denied him constitutional due process by threatening investigation and indictment of a defense witness . . . to prevent her from testifying." 437 F.3d at 677. The basis for the defendant's argument was a letter the government sent to defense counsel, which indicated:

> Witness A is currently the possible subject or target of an investigation concerning false statements and/or obstruction of justice concerning her statements on February 24, 2000, and she may be charged with a crime. The U.S. Attorney's

>Office currently has not provided Witness A with any consideration or promises of consideration.

*Id.* at 678. The Seventh Circuit recognized that "[t]he government's messages to a witness, conveyed through defense counsel, have in the past been held to be improper threats," *id.* (citing *Morrison*, 535 F.2d at 225–26); however, it also clarified that the relevant caselaw focuses on "what the prosecutor communicates *to the witness*," *id.* (citing *United States v. Jackson*, 935 F.2d 832, 847 (7th Cir. 1991)), and identified that a court-ordered letter to defense counsel was "a rather inefficient medium for conveying threats to a witness, [suggesting] that it probably was not intended to deter Witness A from testifying," *id.*

Despite the Defendant's attempt to liken his case to *Morrison*, the two cases are incomparable. The Defendant does not contend that AUSA Koster, like the AUSA in *Morrison*, attempted to threaten or intimidate the Buha brothers by meeting with them or sending them messages or other communications. Instead, the Defendant cites to two instances of what he alleges to be intimidation in the instant case: AUSA Koster's reference that the Government believed the Buha brothers had been untruthful during their grand jury testimony, and her revocation of the Buha brothers' immunity to testify at trial. However, even if AUSA Koster had truly revoked the Buha brothers' immunity, it cannot have been intimidation because it ultimately did not make the Buha brothers any more or less safe to testify during trial.[1] Further, the Court is unconvinced that AUSA Koster's statements can be considered intimidation because AUSA Koster's statements did not include obviously threatening language and the context

---

[1] In the Court's Order Denying the Defendant's Motion to Dismiss Count 2 on Double Jeopardy Grounds [ECF No. 404], the Court explains at length that the Buha brothers were not in danger of being prosecuted for bribing the Defendant, as the statute of limitations had elapsed, and that the Immunity Order did not protect the Buha brothers from perjury charges. As such, a revocation of the granted immunity would not increase the risks associated with testifying.

surrounding AUSA Koster's statements make it unlikely that the statements were intended to be a threat.

First, an examination of AUSA Koster's actual statement illustrates that it cannot be considered a threat. At Sidebar, AUSA Koster stated that "[t]he government does not believe that [the Buha brothers] have been truthful." Trial Tr. vol. 6, 187. Notably, Defense counsel, and not the Government, brought up perjury allegations. *Id.* at 189. AUSA Koster's statements fall short of the obviously threatening conduct that other courts have deemed to be witness intimidation, as it did not guarantee (or even clearly reference the possibility of) prosecution. *See Webb v. Texas*, 409 U.S. 95, 97 (1972) ("[T]he judge implied that he expected [the witness] to lie, and went on to assure him that if he lied, he would be prosecuted and probably convicted for perjury, that the sentence for that conviction would be added on to his present sentence, and that the result would be to impair his chances for parole."); *United States v. Smith*, 478 F.2d 976, 977, 979 (D.C. Cir. 1973) (concluding that a prosecutor's in person statement to a witness representing that the witness, if he chose to testify, would be prosecuted for concealing a deadly weapon, obstruction of justice, and as a principal in a murder, resulted in depriving the defendant of the witness's testimony.). Exactly how the Defendant's attorneys conveyed AUSA Koster's statements to the Buha brothers is not before the Court; it is possible that they felt threatened and were actually concerned that they would be prosecuted for perjury. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 262 (1988). However, such fear cannot be ascribed to AUSA Koster's conduct and thus cannot be grounds for dismissal. *See id.* ("The witness may have felt threatened by the prosecutor's statement, but his subjective fear cannot be ascribed to governmental misconduct . . .").

Second, the context of AUSA Koster's statements make it unlikely that the statements were intended to be a threat. AUSA Koster's statements were made to opposing counsel and the presiding judge during a sidebar, which—like the court-ordered letter in *Johnson*—is a rather inefficient medium for conveying a threat to a witness.[2] Attempting to convey a threat in such a manner would be particularly inefficient because neither the Buha brothers' attorney nor the Buha brothers themselves were present during the sidebar, thus decreasing the likelihood that the threat would be conveyed to the intended party at all. Furthermore, the statement was made in the presence of the judge, which is a setting that limits the potential for threats and overreaching statements. *See Jackson*, 935 F.2d at 847. If AUSA Koster intended to threaten the Buha brothers, it is unlikely that she would elect do so in front of the judge and in a manner that did not guarantee that the threat would be received by the Buha brothers.

As there is no evidence that AUSA Koster directly communicated a threat, either by message or in person, *Morrison* does not support dismissal. Furthermore, as the Court has concluded that the threatening conduct cited by the Defendant does not amount to intimidation, there is no grounds to dismiss the charges against the Defendant. While AUSA Koster's statements "pushed the envelope," *see* Nov. 27, 2020 Op. & Order 13, ECF No. 322, the Court cannot conclude that her statements amounted to a threat that infringed upon the Defendant's due process rights.

Even if the Court did conclude that AUSA Koster's conduct intimidated the Buha brothers and caused them to withhold their testimony, the Court would not dismiss Count 2 of the Indictment. In such a scenario, "it is the general rule that a new trial untainted by error is

---

[2] At some point counsel for the Buha brothers contacted AUSA Koster and asked her about the basis of her belief that the Buha brothers had been untruthful. Aff. of Thomas J. Mullins ¶ 6, ECF No. 262-2. At that time, it appears that she reiterated her belief to the Buha brothers' attorney that they had been untruthful, but made no additional statements regarding the veracity of their testimony. *Id.*

sufficient remedy for the error." *United States v. Medina-Herrera*, 606 F.2d 770, 775 (7th Cir. 1979) (citing *United States v. Tateo*, 377 U.S. 463, 465 (1964)); *see also United States v. Reese*, 561 F.2d 894, 902 (D.C. Cir. 1977) ("There is no question that interference by prosecutors with a defendant's ability to call witnesses is a proper ground for a new trial." (citations omitted)); 3 Fed. Prac. & Proc. Crim. § 588 (4th ed.) ("Nevertheless, if the prosecutor indulges in misconduct of a substantial nature that interferes with the defendant's right to a fair trial, a new trial must be ordered." (collecting cases)). The relief requested by the Defendant is rarely granted and is reserved for only the most extreme scenarios. *See United States v. Childs*, 447 F.3d 541, 545 (7th Cir. 2006) ("[W]e have never taken what we see to be an extreme step of dismissing criminal charges against a defendant because of government misconduct." (citing *United States v. Boyd*, 55 F.3d 239 (7th Cir. 1995); *United States v. Miller*, 891 F.2d 1265 (7th Cir. 1989)). Even in *Morrison*, where the conduct of the AUSA was much more extreme than the instant case, the remedy was not dismissal of the charges; instead, the Third Circuit reversed the district court's order denying a new trial and instructed that if the witness "invokes her Fifth Amendment right not to testify [during the new trial], a judgment of acquittal shall be entered unless the Government, pursuant to 18 U.S.C. §§ 6002, 6003, requests use immunity for her testimony." *Morrison*, 535 F.2d at 229. Dismissal may be warranted in extreme cases of prosecutorial intimidation, *see United States v. Herrera-Medina*, 853 F.2d 564, 568 (7th Cir. 1988); however, the Defendant presented, and the Court has found, no case where charges were dismissed due to conduct of the same type and severity as the conduct at issue.

The Defendant argues that a new trial is an insufficient remedy because the Buha brothers cannot be reimmunized and thus remain intimidated, Mem. in Supp. of Mot. to Dismiss Count 2 Based on Supervisory Power of the Court 6–10, ECF No. 366, and because the Government has

an unfair advantage now that it has seen the Defendant's case. Def.'s Reply 24–27, ECF No. 392. Neither argument renders a new trial insufficient as a remedy.

    First, the Defendant argues that a new immunity Order cannot be granted because "AUSAs in this Circuit are on record saying that it is impossible to immunize a perjury charge," Mem. in Supp. of Mot. to Dismiss Count 2 Based on Supervisory Power of the Court 6. However, this contention appears to be inaccurate.[3] In its brief, the Government represents that "[p]rior to filing [their] brief, the government sought and obtained permission from the Department to immunize the Buhas at the retrial if they are called by the defense, assert the Fifth and their assertions are accepted by the Court." Gov't's Resp. 43 n.27. Accordingly, the Defendant's concern is not at issue.

    Second, the Defendant contends that "[t]here would be no reason for the Buhas to trust a new immunity order," Mem. in Supp. of Mot. to Dismiss Count 2 Based on Supervisory Power of the Court 7. But this is simply incorrect. If the Buha brothers were issued immunity they would be free to testify truthfully without fear of prosecution. While there is generally an exception to immunity orders that permit prosecution for perjury, "the exception refers to future perjury, future false statements or future failure to comply with the immunity order, rather than previous acts." *United States v. Watkins*, 505 F.2d 545, 546 (7th Cir. 1974); *accord United States v. Patrick*, 542 F.2d 381, 385 (7th Cir. 1976) ("[T]his exception refers only to 'future' perjury, false statements or non-compliance with the court order. To interpret this perjury exception to include a prosecution under § 1623(c) for inconsistent statements, some of which were made

---

[3] The Court notes that the case cited by the Defendant, *United States v. Wright*, 634 F.3d 917 (7th Cir. 2011), does not hold that such an immunity order cannot be granted. Furthermore, although in *Wright* the AUSA indicated that he couldn't "imagine the Department of Justice authorizing immunity for potential perjury," there is no indication that the AUSA confirmed that granting such an immunity would be impossible. 634 F.3d at 919.

prior to the latest grant of immunity, would be too broad of a reading of § 6002."). Accordingly, if the Buha brothers are called as witnesses in the new trial, the general exception for perjury would not preclude immunity from perjury for their previous testimony before the grand jury.

Finally, the Court is not persuaded by the Defendant's argument that Count 2 should be dismissed because the Government has already seen his case. *See* Notice of Suppl. Authority (citing *United States v. Bundy*, 968 F.3d 1019 (9th Cir. 2020)), ECF No. 400. The Defendant's argument is contrary to the well-established rule that a new trial is a sufficient remedy in the event of prosecutorial error. *See Medina-Herrera*, 606 F.2d at 775. If the law were as the Defendant suggests, a new trial would never be a sufficient remedy for prosecutorial error that occurred after the trial began. There are many cases where the Seventh Circuit has ruled that a new trial was a sufficient remedy, even in instances where the prosecution had seen the entirety of the defendant's case. *See, e.g.*, *id.* (holding that a new trial is sufficient to remedy the prosecutorial error that occurred during closing arguments). As such, the Defendant's arguments do not support dismissal of Count 2.

## CONCLUSION

For the reasons stated above, Defendant James E. Snyder's Motion to Dismiss Count 2 Based on the Supervisory Power of the Court [ECF No. 365] is DENIED.

SO ORDERED on October 22, 2020.

s/ Theresa L. Springmann  
JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT

9